## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

DAVID HARDING,

      Plaintiff,

v.                           Case No. 6:23-cv-2063

DENNIS LEMMA, SEMINOLE
COUNTY SHERIFF, in his Official
Capacity,

      Defendants.

_____/

## FIRST COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DAVID HARDING ("HARDING"), by and through his undersigned counsels, hereby files this Complaint and Demand for Jury Trial and states as follows:

## NATURE OF ACTION

1.     This is an action for monetary damages, in excess of seventy-five thousand dollars ($75,000.00), costs and reasonable attorneys' fees and costs to redress Defendants violations of Plaintiff's rights pursuant to Florida Civil Rights Act, Florida Statutes Section 760.01 et. seq. ("FCRA") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et. seq. ("Title VII").

## JURISDICTION AND VENUE

2.     This Court has jurisdiction of all claims pursuant to 28 U.S.C. Sections 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights pursuant to the FCRA and Title VII.

3.     This Court has supplemental jurisdiction of Plaintiff's claims arising from the FCRA pursuant to 28 U.S.C. Section 1367(a).

4.     Venue is proper in this district pursuant to 28 U.S.C. Section 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

5.     HARDING, an African-American male, is a resident of Seminole County, Florida

6.     At all times relevant to this action, Plaintiff was an "employee" of the SEMINOLE COUNTY SHERIFF'S OFFICE ("SCSO"), as defined by FCRA and Title VII.

7.     The SCSO is a political subdivision.

8.     At all times material hereto, Defendant SHERIFF LEMMA was and is a "person" subject to suit under 42 U.S.C. § 1983. Defendant SHERIFF LEMMA was and is the elected sheriff for the SCSO in Seminole County,

Florida, and was at all times material hereto, acting in his official capacity. He was responsible for, inter alia, the policies, procedures, and customs of the SCSD as the final policymaker. He was also responsible for training and supervising his deputies. Defendant SHERIFF LEMMA, through his deputies, employees and agents, was responsible for the proper and efficient enforcement of the laws regulations, policies, practices, and procedures of such political entity; the laws and regulations of the State of Florida; and the Constitution of the United States. At all times hereto, his agents, employees, and/or servants were acting within the course and scope of their agency, apparent agency, employment, and under color of law. He is sued in his official capacity.

9. At all times material hereto, Lieutenant Charles Albrecht was an employee, supervisor, and in leadership at the SCSO, under the supervision of Defendant SHERIFF LEMMA, acting within the course and scope of his employment and under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida and/or Seminole County, Florida. He is being sued in his individual capacity.

10. At all times relevant to this action, Defendants met the definition of "employer" as defined by the FCRA and Title VII.

## PROCEDURAL REQUIREMENTS

11.     HARDING timely dual filed a Charge of Discrimination, and the Department of Justice issued a Notice of Right to Sue.

12.     This action was timely filed, and all conditions precedent were met prior to filing this action.

## STATEMENT OF FACTS

13.     HARDING volunteered with the Sheriff's Office Explorer Program at the age of 15 years. During his tenure as an Explorer he accumulated over 2000 hours on the road and 2000 hours of dispatch work.

14.     On or about October 22, 2022, HARDING was sworn in as detention deputy after having graduated from the Police Academy. It should be noted that HARDING was dual certified, as a detention deputy and law enforcement officer, and SCSO activated both certifications with the Florida Department of Law Enforcement, at the outset of HARDINGS employment with SCSO.

15.     Until the incidents described below, HARDING's professional career with the Sheriff's Department was stellar, with no disciplinary actions against him.

16.     On or about December 16, 2022 at around 9P.M., HARDING received a text from Lieutenant Charles Albrecht, HARDING'S superior, wherein Lieutenant Albrecht asked if HARDING was off-duty. Lieutenant Albrecht then asked HARDING to log into a video chat. HARDING did so.

17.     When HARDING logged into the video chat, Lieutenant Albrecht appeared out of uniform in a wig and in women's lingerie. Lieutenant Albrecht, who is married to City County Investigative Bureau ("CCIB") Analyst Jenelle Albrecht, told HARDING that he wanted to "fuck" him and that he could have him transferred from corrections to the road (a preferred assignment) in exchange to his agreeing to a sexual relationship. HARDING disconnected from the chat.

18.     Lieutenant Albrecht made mention that his wife was having an affair with a senior member of CCIB. Lieutenant Albrecht further stated that he was willing to leave his wife to be with HARDING.  HARDING rebuffed Lieutenant Albrecht's sexual advances and Lieutenant Albrecht became angry.

19.     Lieutenant Albrecht followed with immediately sending HARDING a pornographic video showing Lieutenant Albrecht dressed in women's lingerie and engaging in anal penetration with a dark-

complexioned dildo (Plaintiff's counsel is in possession of the video and it will be disclosed to this Court under separate cover).

20.    HARDING immediately called Jan Kloth, a former Sergeant with SCSO and HARDING's mentor, having been employed by the Sheriff's Department for over 33 years to inform her what transpired with Lieutenant Albrecht.

21.    Within two weeks of HARDING rejecting Lieutenant Albrecht he became the subject of a sham internal investigation, which resulted in criminal charges being filed against him and the termination of his employment.

22.    Historically and prior to his employment with SCSO, HARDING provided credible information on drug activity in Central Florida to Sheriff's Deputies with SCSO and other agencies.

23.    On or about, January 2, 2023, HARDING contacted Agent Timothy Knoeller of Defendant's CCIB unit, giving him the name of James Frick, as a potential confidential informant.

24.    Mr. Frick was seen by HARDING nights prior at a local bar using cocaine and HARDING contacted law enforcement to intercede. When no one arrived from the Sheriff's Office, HARDING allowed Mr. Frick to discard of the drugs.

25.     HARDING talked to Mr. Frick about serving as a confidential informant for the Sheriff's Department and HARDING assisted in setting up a meeting between Mr. Frick, Agent Knoeller, and Agent Timothy Kimkopf. HARDING was present at the introduction meeting.

26.     Less than 24 hours after the initial meeting between Mr. Frick, Agent Knoeller, and Agent Kimkopf, for reasons which are contrary to all Defendants' procedures, Senior Officers from SCSO's Standard and Practices Division (commonly known as "IA") interviewed Mr. Frick independently of HARDING, focusing their attention to some potential wrongdoing by HARDING.

27.     As a direct result of HARDING having rebuffed Lieutenant Albrecht's sexual advances, Lieutenant Albrecht and his wife caused an investigation to be opened against HARDING.

28.     The initiation of the internal investigation into HARDING; just two weeks after HARDING rejected Lieutenant Albrecht's advances, ran afoul of IA procedures and Florida's Officer Bill of Rights pursuant to Florida Statutes, Section 112.532.

29.     According to Deputy Sherriff Alan Layton, a participant in the investigation, there was no suspicion that HARDING engaged in criminal activity at the time that the investigation ensued.

30.    The internal investigation was opened absent a complaint having been filed and conclusions of wrongdoing were made against HARDING despite his never been interviewed or afforded the opportunity to be interviewed with the presence of legal counsel.

31.    Sherriff Lemma sanctioned both the unlawful administrative and the unlawful criminal inquiry into HARDING.

32.    For reasons which remain suspicious, there is no record of either Mr. Frick or anyone else filing a complaint with SCSO, about HARDING's interactions with Mr. Frick.

33.    During Mr. Frick's initial meeting with Agents Knoeller and Kimkopf, Mr. Frick made no statements that HARDING made any physical contact with him, let alone "frisked" him.  During Mr. Frick's interview with IA, Mr. Frick said that on the night that he initially encountered HARDING at the bar that HARDING flashed a badge and purportedly frisked his outer clothing. Subsequently after initiation of the formal criminal investigation, signed off by Sheriff Dennis Lemma, Mr. Frick stated that during the search that HARDING allegedly touched his penis for the first time to Sergeant Layton.

34.   Absent no corroboration from any source, Defendants referred the matter for prosecution with full knowledge that there lacked probable cause or any corroborating evidence, including anyone at the bar.

35.   Defendant scheduled an appointment with HARDING and violated his Garrity rights (See *Garrity v. New Jersey*, 385 U.S. 493 (1967) HARDING was not given a "Garrity Warning" and even though he agreed to be interviewed as long as his legal counsel was present, Defendant cancelled the interview.

36.   Defendants' conduct further violated HARDING'S Weingarten rights by refusing HARDING'S request for representation and retaliating against him for requesting representation.

37.   For reasons which remain unknown HARDING was never contacted and given the opportunity to turn himself in, rather deputies showed up unannounced to HARDING's residence to arrest him, on February 16, 2023.

38.   Deputy Spencer Sheldon and another SCSO deputy came to HARDING'S home where he was handcuffed and walked out in the presence of his neighbors. While detained, HARDING was never informed of the charges or facts and circumstances that led to his arrest, despite repeated requests.  Only after he bonded out jail did he learn that he had been arrested

for allegedly impersonating a law enforcement officer, false imprisonment, and battery. HARDING was not allowed to make a phone call from the jail for several hours.

39.   It is important to note that on a number of occasions the SCSO has initiated criminal actions against similarly situated officers such as Deputy Andrew Bergkvist and Deputy Jose Tirado absent utilizing handcuffs, strip search, and/or denying said arrestees a phone call, while in custody. Sheriff Lemma's own son, Dylan Lemma, was arrested on July 19, 2023, and was never handcuffed, strip searched, and/or detained in the manner subjected upon HARDING.  Additionally, Dylan Lemma and Deputy Jose Tirado were allowed to turn themselves into to the Seminole County jail, where they were "walked-through" the booking process.  Deputy Andrew Bergkvist was placed under arrest at the SCSO, rather than his residence.

40.   At all times relevant to this action Defendants knew or should have known that HARDING had not engaged in misconduct or unlawful conduct.

41.   Defendants ignored evidence, failed to conduct a basic investigation and violated HARDING'S rights to contrive a criminal charge against him.

42.    Defendants allowed the Albrechts' bias against HARDING to impair their decision making. The Albrechts served a cat's paw. See *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998) ("In effect, the [biased actor] is the decisionmaker, and the titular `decisionmaker' is a mere conduit for the [biased actor's] discriminatory animus.")

43.    HARDING'S rights, including, but not limited to, his right to be free from sexual harassment and retaliation for refusal to submit to said harassment were violated.

44.    HARDING retained the law firm of DSK Law and is liable for reasonable attorneys' fees and costs. Defendants should be liable for all reasonable attorneys' fees and costs.

45.    Defendants' conduct was willful, intentional and with reckless disregard of HARDING'S rights.

46.    HARDING was subjected to criminal charges, which were later dismissed, and HARDING suffered the loss of his employment with the Seminole County Sheriff's Office.

## COUNT I- SEXUAL HARASSMENT IN VIOLATION OF TITLE VII
## (Against Defendant LEMMA)

47.    HARDING incorporates by reference paragraphs 1 through 21; paragraphs 27 through 28; and paragraphs 44-46 herein.

48.   HARDING was subjected to sexual harassment, including, but not limited to unwanted sexual advances, pornography, sexually charged and explicit comments and quid pro quo sexual harassment by his superior (Lieutenant Albrecht).

49.   Lieutenant Albrecht's conduct created a hostile work environment.

50.   As a direct and proximate cause of HARDING'S superior's sexually inappropriate and unlawful conduct, HARDING suffered and continues to suffer damages.

51.   Lieutenant Albrecht's conduct was unwelcomed by HARDING.

52.   HARDING'S rejection of Lieutenant Albrecht's sexual advances was the motivating factor that prompted his employer to subject HARDING to adverse employment actions, including but not limited to, failure to give HARDING a more favorable job assignment and terminating HARDING.

WHEREFORE, HARDING prays for an award of declaratory relief, injunctive relief, back pay, front pay, benefits, compensatory damages, including, but not limited to damages related to emotional distress, punitive damages, pre and post judgment interest, reasonable attorneys' fees and costs (including expert fees) and any other relief that this Court deems just.

## COUNT II- RETALIATION IN VIOLATION OF TITLE VII
## (Against Defendant LEMMA)

53.    HARDING incorporates by reference paragraphs 1 through 12; and paragraphs 16 through 46.

54.    HARDING engaged in protected activities, including, but not limited to opposing the above referenced sexual harassment.

55.    HARDING'S objection to sexual harassment was a motivating factor that prompted his employer to subject HARDING to adverse employment actions, including but not limited to, failure to give HARDING a more favorable job assignment and terminating HARDING.

56.    As a direct and proximate cause of HARDING'S superior's unlawful conduct, HARDING suffered and continues to suffer damages.

WHEREFORE, HARDING prays for an award of declaratory relief, injunctive relief, back pay, front pay, benefits, compensatory damages, including, but not limited to damages related to emotional distress, punitive damages, pre and post judgment interest, reasonable attorneys' fees and costs (including expert fees) and any other relief that this Court deems just.

## COUNT III- SEXUAL HARASSMENT IN VIOLATION OF FCRA
## (Against Defendant LEMMA)

57.    HARDING incorporates by reference paragraphs 1 through 21; paragraphs 27 through 28; and paragraphs 44-46 herein.

58.   HARDING was subjected to sexual harassment, including, but not limited to unwanted sexual advances, pornography, sexually charged and explicit comments and quid pro quo sexual harassment by his superior (Lieutenant Albrecht).

59.   Lieutenant Albrecht's conduct created a hostile work environment.

60.   As a direct and proximate cause of HARDING'S superior's sexually inappropriate and unlawful conduct, HARDING suffered and continues to suffer damages.

61.   Lieutenant Albrecht's conduct was unwelcomed by HARDING.

62.   HARDING'S rejection of Lieutenant Albrecht's sexual advances was the motivating factor that prompted his employer to subject HARDING to adverse employment actions, including but not limited to, failure to give HARDING a more favorable job assignment and terminating HARDING.

WHEREFORE, HARDING prays for an award of declaratory relief, injunctive relief, back pay, front pay, benefits, compensatory damages, including, but not limited to damages related to emotional distress, punitive damages, pre and post judgment interest, reasonable attorneys' fees and costs (including expert fees) and any other relief that this Court deems just.

## COUNT IV- RETALIATION IN VIOLATION OF FCRA
## (Against Defendant LEMMA)

63.    HARDING incorporates by reference paragraphs 1 through 12; and paragraphs 16 through 46.

64.    HARDING engaged in protected activities, including, but not limited to opposing the above referenced sexual harassment.

65.    HARDING'S objection to sexual harassment was a motivating factor that prompted his employer to subject HARDING to adverse employment actions, including but not limited to, failure to give HARDING a more favorable job assignment and terminating HARDING.

66.    As a direct and proximate cause of HARDING'S superior's unlawful conduct, HARDING suffered and continues to suffer damages.

WHEREFORE, HARDING prays for an award of declaratory relief, injunctive relief, back pay, front pay, benefits, compensatory damages, including, but not limited to damages related to emotional distress, punitive damages, pre and post judgment interest, reasonable attorneys' fees and costs (including expert fees) and any other relief that this Court deems just.

## JURY TRIAL DEMAND

HARDING demands a jury trial to all triable issues.

Dated: October 25, 2023.

Respectfully Submitted,

*/s/ Jason A. Breslin*
**JASON A. BRESLIN, ESQ.**
Fla Bar No: 58264
JABPleadings@DSKLawgroup.com
**LINDSAY N. GREENE, ESQ.**
Fla Bar No: 269610
LGreene@DSKLawGroup.com
de Beaubien, Simmons, Knight,
  Mantzaris & Neal, LLP
332 N. Magnolia Avenue
Orlando, FL  32801
Direct: (407) 992-3556
Asst: (407) 992-3573
Fax No: (407) 650-2840
Attorneys for Plaintiff